******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

PEERLESS REALTY, INC. *v.* CITY
OF STAMFORD ET AL.
(AC 43448)

Alvord, Cradle and Flynn, Js.

*Syllabus*

The plaintiff property owner sought reimbursement from the defendants, the city and its tax assessor, for certain real property taxes paid to the city. In 2017, the plaintiff discovered that the city's tax assessment records listed its property as being comprised of 1.15 acres, rather than the 0.89 acres that the plaintiff's appraiser had determined in 1995 or the 0.88 acres that it had been surveyed at in 2008. The plaintiff contacted the tax assessor, who confirmed that the discrepancy was the result of an error and indicated that it likely had occurred when the city converted its records to an electronic system in 1993. The tax assessor corrected the error, credited the plaintiff for the excess amount it had paid in 2016, the then current tax year, informed the plaintiff that, pursuant to the applicable statutes (§§ 12-60 and 12-129), the city could only refund the plaintiff for excess payments made during the prior three years, and sent the plaintiff an application for reimbursement for the excess amounts paid for the 2014 and 2015 tax years. Instead of completing the application, the plaintiff sent a letter to the defendants demanding a refund of all excess taxes paid since 1993. The defendants' response reiterated that any claim for a refund going back more than three years was time barred by the applicable statutes. The plaintiff filed its complaint, and, in response, the defendants asserted six special defenses, including that the statute of limitations set forth in §§ 12-60 and 12-129 precluded the plaintiff from bringing a claim arising from a clerical mistake in the assessment of taxes on the property more than three years after the applicable due date and that the plaintiff's failure to take advantage of the statutory remedies available to it precluded it from recovering pursuant to a claim for unjust enrichment. The defendants then filed a motion for summary judgment. The plaintiff opposed the motion, claiming that its complaint set forth common-law restitution and unjust enrichment claims, rather than claims pursuant to §§ 12-60 and 12-129, that the defendants had the burden of proof on the issue of the applicability of §§ 12-60 and 12-129 because they raised such claim in their special defenses, and that the defendants failed to sustain that burden because they failed to prove that the assessment error was clerical. The trial court granted the defendants' motion and the plaintiff appealed to this court. *Held* that the defendants were entitled to judgment as a matter of law and the trial court did not err in rendering summary judgment in their favor: the plaintiff was precluded from asserting a common-law claim for unjust enrichment because, contrary to its assertions, the applicable statutes were sufficient to redress the plaintiff's grievances regardless of how the property assessment error occurred, as §§ 12-60 and 12-129 apply to errors that are clerical in nature and certain other applicable statutes (§§ 12-117a and 12-119), raised at the hearing on the motion for summary judgment, apply to errors that are nonclerical; moreover, the fact that the plaintiff failed to take advantage of the statutory remedies available to it within the applicable statutes of limitations did not render the statutory scheme inadequate or allow the plaintiff to circumvent the state taxation scheme by way of the common law; furthermore, because the statutory scheme was adequate regardless of the cause of error, the cause of error was not a genuine issue of material fact.

Argued January 13—officially released March 29, 2022

*Procedural History*

Action for reimbursement of real property taxes paid, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hernandez, J.*,

granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Glen A. Canner*, for the appellant (plaintiff).

*Barbara L. Coughlan*, assistant corporation counsel, for the appellees (defendants).

*Opinion*

ALVORD, J. This case involves a dispute over the remedies available to a taxpayer for reimbursement of property taxes levied on an apartment building following the tax assessor's erroneous recordation, dating back to 1993, of the property's acreage. The plaintiff property owner, Peerless Realty, Inc., appeals from the judgment of the trial court rendered following the granting of the motion for summary judgment filed by the defendants, the city of Stamford (city) and the Stamford tax assessor, Gregory Stackpole.[1] On appeal, the plaintiff claims that the court erred in rendering summary judgment because genuine issues of material fact exist and because the defendants were not entitled to judgment as a matter of law. We affirm the judgment of the trial court.

The record before the trial court, viewed in the light most favorable to the plaintiff as the nonmoving party, reveals the following facts and procedural history. The property at issue, 3 Hackett Circle West, Stamford (property), is a three-story converted mansion that contains thirteen rental units. In 1976, Edward Jordan, along with his brother and another investor, purchased the property. In July, 1981, the three individuals transferred their interests in the property to the plaintiff corporation. The two brothers shared ownership of the corporation until 1995, when Jordan bought out his brother's interest in the plaintiff corporation, becoming the sole owner. As part of the process of purchasing his brother's ownership interest, Jordan and his brother each hired an appraiser to value the property; both appraisers stated that the property was 0.89 acres. Further, in April, 2008, Jordan hired a professional land surveyor to survey the property. The surveyor determined that the property was 0.88 acres in size.

As president of the corporation, Jordan paid the property taxes on this parcel as billed by the city.[2] In or around July, 2017, Jordan hired a tax review service "to try to reduce [his] taxes . . . ." During the course of that engagement, Jordan was shown a printout from the city's tax assessment records that listed the property as being comprised of 1.15 acres rather than 0.89 or 0.88 acres. Jordan, realizing that the property's acreage must have been recorded incorrectly, brought the error to the attention of Stackpole, who determined that there was indeed an error and told Jordan that he "didn't know how it actually happened" but thought that "[the error] occurred when the city converted its manual field cards to the electronic Computer Assisted Mass Appraisal . . . system" in 1993. Stackpole also informed Jordan that he would be permitted to refund only the excess payments for the previous three years, as "the city only goes [back] three years" because "a statute . . . dictated how far back he could go." Stackpole promised to fix the error in the city's records, and

the property has been taxed as 0.89 acres since the 2017 tax year.

After this meeting, Stackpole sent the plaintiff an application for refund/transfer of property taxes specific to tax years 2014 and 2015, with a total refund amount listed as $12,609.66 and marked as relating to General Statutes § 12-129,[3] a request for a refund of "duplicate/excess payment(s)." Jordan did not fill out this application because he "wasn't accepting that" and did not want to jeopardize his right to claim a refund in connection with other years. He did accept a credit of $6577.56 for 2016, the then current tax year.

On October 24, 2017, instead of filing the application for a refund, the plaintiff's attorney sent a letter to the defendants demanding a refund of all of the excess taxes the plaintiff had paid since 1993. The city's assistant corporation counsel responded on November 1, 2017, writing that "any claim for a refund going back more than three years from the tax due date is time barred under General Statutes § 12-60."[4]

On December 28, 2017, the plaintiff commenced this action by way of a two count complaint,[5] in which it alleged that it had been "overcharged . . . more than $150,000 in taxes" since 1993, and that, "[a]s a result of the defendants' action [it had] suffered and continue[d] to suffer damages." The plaintiff further alleged that the defendants had been unjustly enriched as a result of the overpaid taxes. The plaintiff sought compensatory damages, interest, attorney's fees, and costs. On February 13, 2018, the defendants filed an answer and asserted the following six special defenses: (1) "[t]*he plaintiff failed to take advantage of the statutory remedy available to it for a refund of taxes in a timely manner precluding the remedy of unjust enrichment*"; (2) "[t]he statute of limitations set out in . . . [§§] 12-60 and 12-129 precludes the bringing of a claim arising from a clerical mistake in the assessment of taxes more than three years from the date the tax was due"; (3) "[t]ax payments made for which no timely application for refund was made under [§] 12-129 . . . permanently remain the property of the city"; (4) "[t]*he plaintiff has failed to follow the procedure set out in . . . [§] 12-60 . . . and is, therefore, precluded from bringing this action*"; (5) "[t]he first count fails to set out a valid cause of action"; and (6) "[t]he second count fails to set out a valid cause of action." (Emphasis added.) The plaintiff denied the allegations of the special defenses.

On February 28, 2019, the defendants filed a motion for summary judgment and, later, a memorandum of law in support of that motion. In their memorandum, the defendants noted that they "presum[ed]" that the first count of the complaint was brought pursuant to §§ 12-60 and 12-129. The defendants then asserted that "the plaintiff is precluded from bringing a claim arising

from a clerical mistake in the assessment of taxes more than three years from the date the tax was due"; "tax payments made for which no timely application for a refund was made under [§] 12-129 . . . permanently remain the property of the city"; and "the plaintiff's failure to take advantage of the statutory remedy available to it for a refund of taxes in a timely manner precludes it from recovering under the remedy of unjust enrichment." The defendants also asserted that "the plaintiff's failure to follow the procedure set out in [§] 12-60 . . . precludes it from bringing the claims asserted . . . ."[6]

On April 22, 2019, the day on which the defendants' motion for summary judgment was to be argued, the plaintiff filed a memorandum in opposition to the motion for summary judgment. The plaintiff first represented that the first count of its complaint "sets forth a restitution claim seeking reimbursement of excess real estate taxes . . . ." The plaintiff then argued that, because the defendants raised §§ 12-60 and 12-129 in their special defenses, they "ha[d] the burden of proof on that issue." The plaintiff further argued that the defendants failed to sustain that burden because both statutes apply only to " 'clerical' errors" and the defendants "have not sustained their burden of proof that the mistake herein was 'clerical.' " In arguing that the defendants did "not [sustain] their burden" to show that the error was clerical, the plaintiff relied on the fact that Stackpole did not know exactly how the error occurred and " 'surmise[d]' " that it occurred when the records were digitized. The plaintiff then relied on *National CSS, Inc.* v. *Stamford*, 195 Conn. 587, 597, 489 A.2d 1034 (1985), for the proposition that "[c]ommon-law rights may be resorted to where statutory procedures are inadequate." Finally, the plaintiff argued that "[t]here are genuine issues as to material fact including but not limited to how and when the plaintiff's property . . . came to be stated on the tax assessor's records as 1.15 acres as opposed to 0.88 acres."

Also on April 22, 2019, the court, *Hernandez, J.*, heard oral argument on the motion for summary judgment, during which the defendants argued, inter alia, that the plaintiff's claims were "precluded because there's a statutory scheme." At the outset, the defendants' counsel noted her surprise at the plaintiff's representation that count one of the complaint was not intended to be a claim pursuant to §§ 12-60 and 12-129 and its suggestion that the error was anything other than clerical. In light of the plaintiff's new representations, the defendants' counsel referred the court to other provisions of title 12 of the General Statutes, namely General Statutes §§ 12-117a[7] and 12-119[8] and argued: "If you don't like how your property is assessed, you have the right under [§] 12-117[a] . . . to appeal to the Board of Assessment Appeals"; "you can [also] file a claim under [§] 12-119, asserting that [the assessment] was

manifestly unjust or for some other reason wrongful"; and, finally, "if there's a clerical error . . . [the tax assessor] can make a change to the grand list going back three years. That's [§§] 12-60 [and] 12-129." The defendants relied on *National CSS, Inc.* v. *Stamford*, supra, 195 Conn. 587, for their proposition that, where "[t]here's a statutory scheme in play, you can follow the statutory scheme. If you don't, you're out of luck. You can't go and claim unjust enrichment. You can't claim another common-law remedy, an equitable remedy." The defendants continued: "A taxpayer who has not sought redress in an appropriate manner is foreclosed from continuing litigation outside these statutes." In response, the plaintiff maintained its position that the defendants had the burden to show that the error at issue was clerical. The plaintiff's counsel did not address the defendants' arguments with respect to the relief available under §§ 12-117a and 12-119 and further argued that, because §§ 12-60 and 12-129 were not applicable, as there was no proof of clerical error, the plaintiff could "pursue [its] common-law rights."

On August 20, 2019, the court granted the defendants' motion for summary judgment but failed to state the factual or legal basis for its decision. On September 30, 2019, the plaintiff appealed from the court's grant of summary judgment and also filed a motion, captioned "plaintiff's motion to reargue and/or for clarification/ articulation of court decision," in which it argued that, "[i]n order to prosecute [its] appeal [it] need[ed] to know the grounds upon which the court granted the defendants' motion for summary judgment . . . ." The court summarily denied the motion.

On March 24, 2020, the plaintiff filed a motion for articulation, and the defendants thereafter filed a responsive memorandum of law. On August 10, 2020, the court summarily denied the motion for articulation, stating, "For the reasons set forth in the memorandum of the defendant-appellee ([docket entry] #137.00), the city of Stamford, the plaintiff-appellant's motion for articulation is denied."

On August 20, 2020, the plaintiff filed with this court a motion for review of the denial of its motion for articulation. This court granted the motion and ordered the trial court to articulate the factual and legal basis for its ruling granting the defendants' motion for summary judgment. Thereafter, on December 7, 2020, the court issued a memorandum of decision explaining its grant of the defendants' motion for summary judgment.

In its memorandum of decision, the court treated the first count of the complaint as a claim pursuant to §§ 12-60 and 12-129 and determined, after considering the time limitations contained in §§ 12-60 and 12-129, that "the plaintiff cannot recover a refund of any excess taxes paid more than three years after the taxes were due."[9] In addition, the court determined that, because

the plaintiff "failed to follow the procedures prescribed by . . . § 12-60 in a timely manner . . . [it] is precluded from pursuing a claim of unjust enrichment."[10]

On appeal, the plaintiff claims that there "are genuine issues as to material fact . . . concerning [its] claims that [the property] has been assessed as if it were 1.15 acres as opposed to 0.88 acres and as a result the plaintiff has suffered damage." According to the plaintiff, the cause of the assessment error is disputed, rendering §§ 12-60 and 12-129 inapplicable to its case. The plaintiff argues that the court erred in concluding that its claims were foreclosed because it maintains that the current statutory scheme is inadequate, thereby allowing it to assert a common-law claim for unjust enrichment. We disagree and affirm the judgment of the trial court, albeit on different grounds.[11]

We first set forth our well established standard of review on appeal following a trial court's granting of a motion for summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. As an appellate tribunal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . A material fact is a fact which will make a difference in the result of the case. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . .

"The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Citation omitted; internal quotation marks omitted.) *Mariano* v. *Hartland Building & Restoration Co.*, 168 Conn. App. 768, 776–77, 148 A.3d 229 (2016).

We next set forth the applicable principles of a claim sounding in unjust enrichment. "The right of recovery

for unjust enrichment is equitable, its basis being that in a given situation it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff. . . . Where, however, a statutory scheme exists for the recovery of a benefit that is also recoverable at common law, the common law right may be resorted to only where the statutory procedures are inadequate." (Citation omitted; internal quotation marks omitted.) *National CSS, Inc.* v. *Stamford*, supra, 195 Conn. 597. Therefore, we must address application of the relevant statutory scheme.

The plaintiff argues that §§ 12-60 and 12-129 provide an inadequate procedure for a taxpayer to obtain relief because it disputes that the tax assessment error was a "clerical omission or mistake . . . ." General Statutes § 12-60. Thus, in the plaintiff's view, no statutory scheme exists for recovery of the overpaid taxes. Therefore, the plaintiff asserts that its claim for unjust enrichment cannot be barred as a matter of law and it is permitted to seek a refund of all excess taxes paid in a claim for unjust enrichment.

In response, the defendants direct this court to the statutory relief found in §§ 12-117a and 12-119. It is the defendants' position that §§ 12-117a and 12-119 set forth a procedure for an assessment error that is not clerical in nature and, therefore, the label put on the error is irrelevant, as the statutory scheme provides redress for clerical and nonclerical errors alike. Thus, even if the error is nonclerical, as asserted by the plaintiff, companion provisions in title 12 provide redress for the taxpayer. We agree with the defendants that the statutory scheme precludes this common-law claim for unjust enrichment.[12]

Section 12-60 provides the procedure for the correction of a clerical omission or mistake in the assessment of taxes. A request for correction must be made "not later than three years following the tax due date relative to which such omission or mistake occurred . . . ." General Statutes § 12-60.

Section 12-129 provides the taxpayer with a procedure to follow in order to obtain a refund of taxes paid in excess due to "a clerical error on the part of the assessor or board of assessment appeals . . . ." As in § 12-60, an application for a refund must be made "three years from the date such tax was due . . . ." General Statutes § 12-129. Further, § 12-129 specifically provides in relevant part that "[a]ny payment for which no timely application is made or granted under this section shall permanently remain the property of the municipality. . . ."

Section 12-117a sets forth the process for those "claiming to be aggrieved by the action of the board of tax review or the board of assessment appeals . . . ."

An application must be made "within two months from the date of the mailing of notice of [the board's] action . . . ." General Statutes § 12-117a. The section "provide[s] a method by which an owner of property may directly call in question the valuation placed by assessors upon his property . . . ." (Internal quotation marks omitted.) *Konover* v. *West Hartford*, 242 Conn. 727, 734, 699 A.2d 158 (1997).

Section 12-119 addresses the procedure applicable when, inter alia, "a tax . . . was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property . . . ." Pursuant to § 12-119, application for relief must be made to the Superior Court "prior to the payment of such tax" and "within one year from the date as of which the property was last evaluated for purposes of taxation . . . ."

We next set forth the legal principles that guide our review of the applicable statutory scheme. In *National CSS, Inc.*, our Supreme Court determined that "the procedure available [in § 12-60] was more than sufficient in providing the plaintiff [taxpayer] a method by which a refund could be obtained," and, therefore, a claim for unjust enrichment was not available to the taxpayer who erroneously paid duplicative taxes. *National CSS, Inc.* v. *Stamford*, supra, 195 Conn. 596–97. In so holding, the court relied on the following principle: "Public policy requires . . . that this court not permit taxes collected or paid to be the subject of perpetual litigation, at any time, to suit the convenience of the taxpayer." Id., 597–98; see also *Danbury* v. *Dana Investment Corp.*, 249 Conn. 1, 15, 730 A.2d 1128 (1999) ("The rationale for this rule is the need on the part of the government for fiscal certainty. A municipality, like any governmental entity, needs to know with reasonable certainty what its tax base is for each fiscal year, so that it responsibly can prepare a budget for that year."). Furthermore, "[a] taxpayer who has not sought redress in an appropriate manner is foreclosed from continuing litigation outside [of title 12]." *National CSS, Inc.* v. *Stamford*, supra, 598.

Keeping these principles in mind, we are satisfied that the provisions of §§ 12-60, 12-117a, 12-119, and 12-129 together create a statutory scheme that is sufficient to redress the plaintiff's grievances, regardless of how the error occurred. See id., 597. Specifically, because the provisions of title 12 provide sufficient procedures in cases in which excess taxes are paid due to clerical errors, improper property valuation, and "manifestly excessive" assessments; General Statutes §§ 12-60, 12-117a, 12-119, and 12-129; the cause of the current error is irrelevant: no matter how the error occurred, the provisions of title 12 provide a process through which

the plaintiff could have sought relief. See *Mariano* v. *Hartland Building & Restoration Co.*, supra, 168 Conn. App. 777. As the defendants aptly point out, "[i]f it was a clerical error, the plaintiff [could] request a refund going back three years; if it was not, the plaintiff [was] limited to pursuing its remedies under [§] 12-117a or [§] 12-119, which limit recovery even more than . . . § 12-60 and/or § 12-129."

Our conclusion is particularly appropriate given that the defendants concede the applicability of §§ 12-60 and 12-129 to the present facts and admit that there was a clerical error. Indeed, when the error was discovered, Stackpole made clear that, on application, the plaintiff would receive a refund pursuant to those statutes for the preceding three tax years. Furthermore, the plaintiff has failed to provide us with any reason as to why the statutory scheme should be held insufficient. Finally, the fact that the plaintiff failed to take advantage of the statutory remedies does not render the statutory scheme inadequate nor does it allow the plaintiff to "circumvent the state taxation scheme by way of the common law." *National CSS, Inc.* v. *Stamford*, supra, 195 Conn. 597. Therefore, we conclude that the plaintiff is precluded from asserting a claim for unjust enrichment. See id.

Thus, contrary to the plaintiff's claim, the cause of the error cannot be material to the issue presented in this case. Because the statutory scheme is adequate regardless of the cause of the error, a determination as to how the error occurred could not change the result of the case, and, therefore, the cause of the error cannot be a genuine issue of material fact.[13] See *Mariano* v. *Hartland Building & Restoration Co.*, supra, 168 Conn. App. 777. As a result, the defendants were entitled to judgment as a matter of law and the court correctly rendered summary judgment.[14]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Hereinafter, we refer to the city of Stamford and the Stamford tax assessor, Gregory Stackpole, collectively, as the defendants, and individually by name where appropriate.

[2] These bills did not list the property acreage on record with the office of the tax assessor.

[3] General Statutes § 12-129 provides in relevant part: "Any person, firm or corporation . . . who, by reason of a clerical error on the part of the assessor or board of assessment appeals, pays a tax in excess of that which should have been assessed against his property, or who is entitled to a refund because of the issuance of a certificate of correction, may make application in writing to the collector of taxes for the refund of such amount. Such application shall be delivered or postmarked by the later of (1) three years from the date such tax was due, (2) such extended deadline as the municipality may, by ordinance, establish, or (3) ninety days after the deletion of any item of tax assessment by a final court order or pursuant to subdivision (3) of subsection (c) of section 12-53 or section 12-113. Such application shall contain a recital of the facts and shall state the amount of the refund requested. The collector shall, after examination of such application, refer the same, with his recommendations thereon, to the board of selectmen in a town or to the corresponding authority in any other municipality, and shall certify to the amount of refund, if any, to which the

applicant is entitled. . . . Any payment for which no timely application is made or granted under this section shall permanently remain the property of the municipality. . . .”

[4] General Statutes § 12-60 provides in relevant part: “Any clerical omission or mistake in the assessment of taxes may be corrected according to the fact by the assessors or board of assessment appeals, not later than three years following the tax due date relative to which such omission or mistake occurred, and the tax shall be levied and collected according to such corrected assessment. . . . Any person claiming to be aggrieved by the action of the assessor under this section may appeal the doings of the assessor to the board of assessment appeals as otherwise provided in this chapter, provided such appeal shall be extended in time to the next succeeding board of assessment appeals if the meetings of such board for the grand list have passed. . . .”

[5] Count one of the complaint alleged:

“1. The plaintiff Peerless Realty, Inc., owns 3 Hackett Circle West, Stamford, CT.

“2. 3 Hackett Circle West is a three-story converted mansion apartment building containing thirteen rental units situated on 0.88 of an acre.

“3. For the past twenty-five years—since 1993—the defendants city of Stamford and Stamford tax assessor have been taxing 3 Hackett Circle West as if it consisted of 1.15 acres.

“4. This has resulted in substantial overcharging of the plaintiff for taxes.

“5. For instance—for October 1, 2016 Grand List taxes, the defendants billed the plaintiff $42,211.12 for taxes when the correct amount was $35,605.56—a difference of $6605.56.

“6. This has been going on for twenty-five years.

“7. From 1993 to present—the defendants city of Stamford and Stamford tax assessor have overcharged the plaintiff more than $150,000 in taxes.

“8. Under date of October 24, 2017, the plaintiff made a demand for a refund of excess taxes collected.

“9. The defendants denied the plaintiff’s request.

“10. As a result of the defendants’ action, the plaintiff has suffered and continues to suffer damages.”

The second count of the complaint alleged:

“1–9. Paragraphs 1 through 9, inclusive of the first count are hereby made paragraphs 1 through 9 inclusive of the second count.

“10. The defendants have been unjustly enriched.

“11. As a result of the defendants’ action, the plaintiff has suffered and continues to suffer damages.”

[6] In their memorandum in support of summary judgment, the defendants additionally argued that, because the plaintiff “failed to alert the city to the actual square footage of the lot when [Jordan] completed a data mailer in 2008,” it was negligent and could not recover the excess taxes it paid. The defendants referred to a “Data Verification Report” that the city’s assessor mailed to the plaintiff in 2008. It indicated that the property was 50,000 square feet in size, which, as noted by the trial court, is equivalent to 1.15 acres. The plaintiff received the report, corrected other information on the report, and returned it to the assessor as instructed.

[7] General Statutes § 12-117a provides in relevant part: “Any person . . . claiming to be aggrieved by the action of the board of tax review or the board of assessment appeals, as the case may be, in any town or city may, within two months from the date of the mailing of notice of such action, make application, in the nature of an appeal therefrom . . . to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. Such citation shall be signed by the same authority and such appeal shall be returnable at the same time and served and returned in the same manner as is required in case of a summons in a civil action. The authority issuing the citation shall take from the applicant a bond or recognizance to such town or city, with surety, to prosecute the application to effect and to comply with and conform to the orders and decrees of the court in the premises. Any such application shall be a preferred case, to be heard, unless good cause appears to the contrary, at the first session, by the court or by a committee appointed by the court. . . . If the assessment made by the board of tax review or board of assessment appeals, as the case may be, is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and any costs awarded by the court, or, at the applicant’s option, shall be granted a tax credit for such overpayment, interest and any costs awarded

by the court. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, less any lien recording fees incurred under sections 7-34a and 12-176, together with interest and any costs awarded by the court. The amount to which the assessment is so reduced shall be the assessed value of such property on the grand lists for succeeding years until the tax assessor finds that the value of the applicant's property has increased or decreased."

[8] General Statutes § 12-119 provides in relevant part: "When it is claimed . . . that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation and shall be served and returned in the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the Superior Court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

[9] Although the plaintiff makes passing reference in its appellate brief to the first count of its complaint as "set[ting] forth a restitution claim," the plaintiff fails to raise or brief a claim on appeal that the trial court erred in treating the first count of the complaint as a claim pursuant to §§ 12-60 and 12-129. We note that the defendants likewise understood the claim as brought pursuant to those statutes, and the plaintiff previously referred to the case only as "claiming damages and unjust enrichment."

[10] In addition to its determination that the plaintiff could not pursue a claim for unjust enrichment, the court also determined that there was no genuine issue of material fact that the plaintiff was "negligent in failing to address the discrepancy in a timely manner," referring to the plaintiff's failure to act on the acreage/square foot error apparent in the 2008 "Data Verification Report" that the tax assessor sent to the plaintiff. See footnote 6 of this opinion. The court concluded that the report put the plaintiff on notice of the error and its claim for unjust enrichment was therefore precluded.

[11] "In ruling on a motion for summary judgment, the court is not to decide issues of fact; its function is to determine whether there are genuine issues of material fact. . . . In opposing a motion for summary judgment, a party is not required to present evidence necessary to prevail at trial, only evidence sufficient to raise issues of fact. We may affirm the judgment of the court on different grounds." (Citation omitted.) *Vaillancourt* v. *Latifi*, 81 Conn. App. 541, 544 n.4, 840 A.2d 1209 (2004).

[12] In its principal appellate brief, the plaintiff notes that the defendants did not expressly rely on §§ 12-117a and 12-119 until oral argument on their motion for summary judgment. For the reasons that follow, we conclude that we properly may address the applicability of §§ 12-117a and 12-119 to this case.

First, we note that the complaint does not allege any intentional conduct on the part of the defendants in the assessment error. Second, the defendants asserted special defenses, two of which are particularly relevant. Specifically, the defendants asserted that "[t]he plaintiff failed to take advantage of the statutory remedy available to it for a refund of taxes in a timely manner precluding the remedy of unjust enrichment" and "[t]he plaintiff has failed to follow the procedure[s] set out in . . . [§] 12-60 . . . and is, therefore, precluded from bringing this action." When asserting these special defenses, and in filing their motion for summary judgment, the defendants were responding to the complaint understood to be (1) a claim pursuant to §§ 12-60 and 12-129 in count one and (2) presenting no dispute that the error was clerical. As soon as the defendants became aware of the plaintiff's characterization of count one as distinct from a claim under §§ 12-60 and 12-129, and the plaintiff's dispute over the nature of the error, they appropriately directed the trial court to consider §§ 12-117a and 12-119. The plaintiff had ample opportunity during argument to respond to the authority cited by the

defendants but failed to take advantage of that opportunity. Further, at the conclusion of oral argument, the court offered the plaintiff the opportunity to file additional briefing, which the plaintiff ultimately declined. Thus, when the defendants asserted their reliance on these provisions of title 12 at oral argument on summary judgment, they were not raising a new claim but rather were expounding on the defense that they had consistently put forth since the inception of litigation, which is that a claim for unjust enrichment is precluded when there is an adequate statutory scheme.

In addition, even if we were to conclude that the defendants' reliance on §§ 12-117a and 12-119 was not properly raised in the trial court proceedings, our consideration of these statutes remains appropriate. "[O]rdinarily, we will decline to address only a *claim* that is raised for the first time on appeal. . . . [A] claim is an entirely new legal issue, whereas, [g]enerally speaking, an argument is a point or line of reasoning made in support of or in opposition to a particular claim. . . . Because [o]ur rules of preservation apply to claims . . . [and not] to legal arguments . . . [w]e may . . . review legal arguments that differ from those raised below if they are subsumed within or intertwined with arguments related to the legal claim before the court." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Markley* v. *State Elections Enforcement Commission*, 339 Conn. 96, 104–105 n.9, 259 A.3d 1064 (2021).

We further note that the defendants fully briefed the applicability of §§ 12-117a and 12-119 in their appellate brief, and the plaintiff failed to offer any response in its reply brief, beyond again noting that the defendants did not expressly rely on §§ 12-117a and 12-119 until oral argument on their motion for summary judgment.

[13] The plaintiff also asserts on appeal that when the error occurred, whether the error was the result of clerical error or deliberate action, and "what statutory procedures and/or common-law rights/remedies . . . the plaintiff ha[s] available to recover overpayment of property taxes" are genuine issues of material fact that preclude the entry of summary judgment. We disagree.

With respect to the first of these additional assertions, the parties agree that the error occurred in 1993, and, therefore, when the error occurred is not at issue. Furthermore, as with the cause of the error, the timing of the error has no impact on our conclusion that the plaintiff is foreclosed from asserting a claim for unjust enrichment and, therefore, cannot be material. The second of the plaintiff's assertions is simply a restatement of the plaintiff's argument that the cause of the error is a genuine issue of material fact, which is resolved in the body of this opinion. The third of the plaintiff's assertions, as the defendants note, is an issue of law and not one of fact and, therefore, cannot be a genuine issue of material fact that precludes the entry of summary judgment.

[14] The plaintiff also claims that the court erred in imposing on it the burden of proof with respect to the defendants' special defenses. According to the plaintiff, because the defendants asserted §§ 12-60 and 12-129 in their special defenses, they had the burden of proof with respect to the applicability of those statutes. Therefore, the plaintiff asserts that, when the court stated in its memorandum of decision that "[the plaintiff] has presented no evidence that someone intentionally put down the wrong acreage for the property," it "imposed on the plaintiff the burden to prove the defendants' special defenses." Because we have determined that the cause of the error is irrelevant, we need not address the plaintiff's claim with respect to the burden of proof on that issue.

———————————————